Considered by MARQUETTE, MILLIKEN, and PHILLIPS.

---

C. HOSSFELD & SON CO., PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7039.   Promulgated August 8, 1927.

*Andrew T. Smith, Esq.*, and *Virgil Y. Moore, Esq.*, for the petitioner.
*F. O. Graves, Esq.*, for the respondent.

STERNHAGEN: Deficiency of $2,687.19 income and excess-profits taxes for 1918. Respondent disallowed a deduction of alleged obsolescence of good will.

### FINDINGS OF FACT.

The petitioner was an Ohio corporation with its principal place of business at 122 South Second Street, Hamilton, Ohio. It was engaged in the business of selling liquors at wholesale and retail. The business was established in 1865. Except as hereinafter set forth, the petitioner engaged in no other business from 1905 to June 30, 1919. It went out of the liquor business not later than June 30, 1919. The petitioner's existence is being maintained pending a determination of its tax liability.

The petitioner constructed a 65-room hotel building on South Second Street which was completed in 1908 or 1909. Immediately upon completion it was leased to others for operation. The hotel was never operated by the petitioner at any time.

In 1905 the petitioner occupied a store at Second and Court Streets for which it paid $75 per month. Upon completion of the hotel building petitioner moved into space therein on the ground floor which had been reserved when the property had been leased, and for the

use of which no payment was made by the petitioner. The space in the hotel building occupied by the petitioner covered about the same area as the space it had occupied at its former location. The new location was not so desirable as the old, being more than half a block farther from the business section of the city.

There was no entrance from the space occupied by the petitioner into the hotel proper. A bar was operated in the hotel by the lessee thereof, with which the petitioner had no connection.

The petitioner borrowed money for the construction of the hotel building, but never borrowed any money for the liquor business.

The petitioner owned three brands for whiskey sold by it, " Junemont," " Belle of Miami," and " Town Hill." These brands were registered shortly after 1905, and nothing was paid therefor aside from the registry fees. The whiskey sold under the brands " Junemont " and " Belle of Miami " was bottled at the petitioner's place of business. The " Town Hill " whiskey was bottled at a distillery in Louisville, Ky. " Junemont " was sold by petitioner for 65 cents a quart, and " Belle of Miami " for 70 cents a quart. Whiskey of like quality and age as that sold under these two brands was drawn from the barrel and sold by petitioner unlabeled for 5 to 10 cents less a quart. " Town Hill " was sold by petitioner for $1 a quart. Whiskey of like quality and age was drawn from the barrel and sold by petitioner unlabeled for 65 cents a quart. There was no appreciable difference between the cost of the branded and of the unlabeled whiskey of like quality and age, the only element of difference being the cost of the labels, which was very slight.

The petitioner made special efforts to sell the branded whiskey because of the greater profit, and the sales of whiskey under these brands constituted more than 50 per cent of its sales of whiskey.

The petitioner sold other bottled-in-bond brands of whiskey comparable in age and quality to " Town Hill." The profit on such brands ranged from 9 to 12 cents a quart.

The net tangible assets (the excess of the tangible assets over the liabilities) directly employed in the liquor business, and the net profits of the liquor business for the years from 1907 to 1912, inclusive, are stated below. These figures exclude all assets used in the hotel enterprise and all profits and losses therefrom.

| | Net tangible assets | Net profits |
|---|---|---|
| 1907 | $35,765.58 | $11,127.29 |
| 1908 | 35,794.64 | 1,371.46 |
| 1909 | 6,943.57 | 9,314.46 |
| 1910 | 8,004.94 | [1] 2,455.10 |
| 1911 | 15,934.04 | 11,494.74 |
| 1912 | 35,419.98 | 8,728.63 |
| Total | 137,862.75 | 39,581.48 |

[1] Net loss.

The net profits have been reduced by $50 a month, representing the amount arbitrarily fixed by petitioner as the rental value of the space occupied by it in the hotel building.

The net tangible assets directly employed in the hotel enterprise, and the losses sustained therein, for the period from 1908 to 1912, are:

|  | Net tangible assets | Net losses |
|---|---|---|
| 1908 | $16,919.16 | $141.98 |
| 1909 | 68,694.87 | [1] 2,076.46 |
| 1910 | 77,722.71 | 5,351.18 |
| 1911 | 77,722.71 | 3,891.63 |
| 1912 | 77,722.71 | 1,629.71 |
| Total | 318,782.16 | 8,938.04 |

[1] Profit.

An amount of $50 for each month has been deducted from the loss corresponding to the deduction from the income from the liquor business.

The net profits from the liquor business for the years 1913 to 1918, inclusive, are:

| | | | |
|---|---|---|---|
| 1913 | $4,222.44 | 1916 | $5,091.15 |
| 1914 | 987.43 | 1917 | 17,256.84 |
| 1915 | 11,313.61 | 1918 | 57,812.38 |

The net tangibles used in the liquor business in 1917 were $66,659.30, and in 1918 were $96,805.11.

The net sales of liquor for the years from 1907 to 1918, inclusive, are:

| | | | |
|---|---|---|---|
| 1907 | $78,952.00 | 1913 | $121,017.47 |
| 1908 | 78,659.67 | 1914 | 107,762.45 |
| 1909 | 87,370.19 | 1915 | 99,904.65 |
| 1910 | 97,343.34 | 1916 | 112,943.72 |
| 1911 | 91,712.56 | 1917 | 126,307.12 |
| 1912 | 97,138.74 | 1918 | 311,896.20 |

The petitioner, on its income-tax return for 1918, deducted $18,282.23 for obsolescence of good will based upon a good will value of $21,496 as of March 1, 1913. It determined this value by capitalizing at 20 per cent the average earnings from the liquor business for the period from 1907 to 1912, inclusive, which were in excess of 10 per cent of the average net tangibles employed during the same period. The respondent disallowed the deduction.

Reviewed by the Board.

*Judgment will be entered for the respondent.*